OPINION
{¶ 1} Con-Way Transportation Services, Inc. ("Con-Way") timely appeals the trial court's denial of its motion for summary judgment following a jury trial in favor of Avery Dennison Corporation ("Avery"). Con-Way also claims the trial court erred in admitting certain evidence over its objections. For the reasons that follow, we affirm.
 {¶ 2} Con-Way and Avery had a business relationship as shipper and manufacturer/supplier respectively. Initially, Con-Way shipped Avery's product at a rate equal to 8% off of Avery's tariff.[1] In 2001, Avery began an expansion of its business known as the RollXChange program. The RollXChange program was an internet-based program where Avery customers could buy and sell Avery merchandise among each other. Avery was not equipped to handle the technological expansion involved in the shipping. Therefore, Avery requested Con-Way provide the logistical transportation required to service the program. Due to the complexity of the program, Avery and ConW-ay agreed that instead of utilizing Avery's tariff as the base for the shipping price and corresponding discount, as the parties had done in their previous business relationship, they would use Con-Way's tariff. According to Avery, both parties acknowledged that the fee would be arranged as "revenue neutral." In other words, the corresponding discount charged from Con-Way's tariff would be equal to that of Avery's previous 8% discount on scale to the new, presumably higher, revenues. Con-Way disagreed with that terminology and argued the RollXChange program was a novelty and therefore Con-Way could not have created such a structure. Both parties, however, recognized that the fee structure would be different in any event, as it was based on Con-Way's rate; not Avery's. The parties signed an agreement recognizing the new fee structure on October 15, 2001 wherein Avery was to pay a rate equal to a 73% discount off ConW-ay's tariff for Con-Way's shipping services.
 {¶ 3} Soon after operation began under this pricing schedule, Avery recognized the shipping invoices were higher than anticipated. Avery alerted Con-Way and ConW-ay agreed to investigate the matter. The parties attempted to negotiate a settlement of the pricing issue but were unsuccessful in those attempts. Avery eventually filed the underlying action seeking reimbursement through several theories of recovery for its perceived overpayment for Con-Way's services.
 {¶ 4} On November 7, 2003, Avery filed a complaint in the Lake County Court of Common Pleas against Con-Way. The complaint alleged claims for negligent misrepresentation, reformation, promissory estoppel, and breach of contract. Approximately one month later, Con-Way removed the litigation to the United States District Court for the Northern District of Ohio, Eastern Division, alleging federal jurisdiction governed Avery's claims. Avery disagreed with the removal to federal court and filed a motion to remand the matter back to state court. Con-Way filed a motion to dismiss Avery's complaint for failure to comply with the Interstate Commerce Commission Termination Act pursuant to49 U.S.C. §§ 13710 and 14705.
 {¶ 5} On November 9, 2004, via a memorandum opinion and order which was later adopted by the court, the litigation was remanded back to the Lake County Court of Common Pleas for lack of federal subject matter jurisdiction. Upon remand, Con-Way filed a motion for summary judgment. On June 17, 2005, the trial court denied ConW-ay's summary judgment request. A jury trial commenced on July 5, 2005. The jury returned a verdict in favor of Avery.
 {¶ 6} Through interrogatories to the jury, the jury specifically found that ConW-ay made a mistake that resulted in an overpayment by Avery for shipping services in the amount of $456,725 from October 2001 through August 2002. The jury further found that Con-Way made negligent misrepresentations to Avery and that Con-Way was unjustly enriched. The jury found Avery reasonably relied to its detriment on ConW-ay's promises of remedial action to remedy the pricing mistake. The jury contributed 33.3% negligence to Avery.
 {¶ 7} On July 11, 2005, the trial court acknowledged the jury verdict in the amount of $456,725 and acknowledged the jury's finding of comparative negligence. The trial court thereupon reduced the jury award to $304,635.58, a 33.3% reduction in accordance with the jury's equivalent finding of comparative negligence.
 {¶ 8} Avery's claim of reformation was not tried to the jury. The reformation claim was presented to the court for determination on the briefs following the jury trial. Despite the outstanding reformation claim, both Avery and Con-Way filed notices of appeal to the trial court's judgment entry finding Con-Way owed $304,635.58 to Avery based on the jury's verdict.
 {¶ 9} On July 14, 2005, Avery filed a motion to correct the trial court's judgment entry which reduced the jury verdict as a result of the finding of comparative negligence. According to Avery, the reduction was inappropriate since the jury found in favor of Avery on each of its claims and the reduction was only based on one of the claims. Avery sought correction of the judgment entry to reflect the full judgment amount of $456,725.
 {¶ 10} On September 12, 2005, this court dismissed the appeals by Avery and Con-Way for lack of a final appealable order due to the fact that the trial court had failed to rule on the reformation claim. Avery Dennison Corp. v. Con-WayTransportation Services, Inc., 11th Dist. No. 2005-L-106,2005-Ohio-4769. On December 14, 2005, the trial court ruled on the pending reformation claim and Avery's motion to correct the judgment amount. The trial court interpreted Avery's motion to correct the judgment entry as a motion for reconsideration as it sought to change more than a mere clerical error. The trial court agreed with Avery that its claims for promissory estoppel, unjust enrichment and negligent misrepresentation were alternative theories of relief. Therefore, the trial court concluded it was error to reduce the judgment amount based on only one theory. The trial court found the promissory estoppel and unjust enrichment claims were not subject to the reduction for comparative negligence. The trial court then vacated its prior judgment entry and entered judgment in favor of Avery in the full amount of $456,725.
 {¶ 11} The trial court also decided the reformation of contract claim in its December 14, 2005 judgment entry. The court did not find in favor of Avery on its reformation of contract claim. Rather, the court deferred to the jury and found that since the jury had determined Con-Way made a mistake that resulted in the overcharge, the reformation requested would not serve any purpose.
 {¶ 12} Con-Way's first assignment of error states in part:
 {¶ 13} "THE TRIAL COURT ERRED IN DENYING CON-WAY'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 14} Con-Way argues summary judgment was appropriate because Avery's claims were barred under federal law.
 {¶ 15} First, Con-Way contends the trial court should have granted its summary judgment request due to the fact that Avery failed to comply with federal law. According to Con-Way, the federal statute, 49 U.S.C. § 13710(a)(3)(B), otherwise known as the "180 day rule," imposes a strict prerequisite on shippers prior to filing any civil action. 49 U.S.C. § 13710(a)(3)(B) provides: "If a shipper seeks to contest the charges originally billed or additional charges subsequently billed, the shipper may request that the Board determine whether the charges billed must be paid. A shipper must contest the original bill or subsequent bill within 180 days of receipt of the bill in order to have the right to contest such charges."
 {¶ 16} Second, Con-Way argues that summary judgment was appropriate because Avery failed to commence litigation within eighteen months. Con-Way asserts that federal law sets forth a statute of limitations known as the "18 month rule," which requires parties to file a civil action within eighteen months from the accrual of the claim. 49 U.S.C. § 14705(b) states: "[a] person must begin a civil action to recover overcharges within 18 months after the claim accrues."
 {¶ 17} A trial court's decision to deny a motion for summary judgment is reviewable on appeal if the movant obtains an adverse judgment following trial. Balson v. Dodds (1980),62 Ohio St.2d 287, paragraph one of syllabus. However, even if a trial court's decision to deny summary judgment may have been error at the time, that error is rendered moot or harmless if the subsequent trial demonstrates the existence of genuine issues of material fact. Continental Ins. Co. v. Whittington (1994),71 Ohio St.3d 150, syllabus.
 {¶ 18} A review of summary judgment followed by a trial therefore must be reviewed according to the harmless error doctrine. Civ.R. 61 provides: "[n]o error * * * or defect in any ruling * * * is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."
 {¶ 19} Con-Way contends our review of the summary judgment decision is limited to only the evidence before the court at the time of the presentment of the motion. This contention is not supported in law or logic. A denial of summary judgment reviewed post-trial is not confined to a review of only the evidence presented at the time of the motion, but rather includes all the evidence presented at trial. See, Whittington, supra, at 155. Otherwise, justice could be thwarted by reverting to the posture of the case and evidence in the pre-trial form. Id. at 157. It does not make sense to rewind the trial clock and examine the evidence as it existed in the stages of the summary judgment motion. If this were allowed to occur, "`* * * a decision based on less evidence would prevail over a verdict reached on more evidence and judgment would be taken away from the victor and given to the loser despite the victor having the greater weight of the evidence. This would defeat the fundamental purpose of judicial inquiry.'" Id. at 157, quoting, Home Indem. Co. v.Reynolds Co. (1962), 38 Ill. App.2d 358, 365-367.
 {¶ 20} Therefore, our scope of review on the summary judgment motion in a post-trial arena includes the entire scope of the trial. The evidence at trial provided details as to the notification timeline, essential in analysis of Con-Way's first assignment of error.
 {¶ 21} The 180 day rule requires shippers to notify carriers of billing disputes within 180 days of receipt of the disputed invoice. "* * * [A] shipper loses any right to contest charges (whether before the Board, in court, or both) if it does not notify the carrier of its disagreement within 180 days of receiving the disputed bill, as required by section 13710(a)(3)(B)." Carolina Traffic Services of Gastonia, Inc. —Petition for Declaratory Order, STB No. 41689 (May 31, 1996), 7. According to the Surface Transportation Board, the 180 day rule imposes an additional requirement to the typical statute of limitations. "This notification requirement must be met in order for the carrier or shipper to have a "right" of action." Id. Following this decision, the STB clarified the 180 day rule even more and declared that it applied to all billing disputes.National Assoc. of Freight Transp. Consultants, Inc. — Petitionfor Declaratory Order, STB No. 41826 (Apr. 21, 1997).
 {¶ 22} The STB also explained the notice requirements of49 U.S.C. § 13710(a)(3)(B) and deemed that virtually any notification will suffice under the statute provided it is made within the 180 day time period. "The statute requires the shipper to `contest' a bill within 180 days. It does not specify the manner of notification or require that the carrier have received the document by which the shipper contests the charges within that period." Id. at 5. The STB also held that the parties may extend the 180 day period by mutual agreement. Id.
 {¶ 23} The evidence at trial clearly showed Avery notified Con-Way within the 180 day window under federal law. Tony Lampert, acting national transportation manager for Avery during the applicable period, testified that a few weeks after Avery and Con-Way had signed the new pricing agreement, he noticed the rates charged by Con-Way were much higher than anticipated. Lampert stated he "* * * determined that we [Avery] were getting charged more than what we were supposed to and at that point I contacted Con-Way and informed them of this and provided them with the information to take a look at and review themselves." Lampert identified "Plaintiff's Exhibit 3" as an e-mail sent by him to an executive at Con-Way regarding the pricing discrepancy. The e-mail was dated November 28, 2001 and stated: "[t]he following file has a summary, [sic] and details of the shipments that we have paid since the new agreement was effective 10-22. It shows that compared to the 8% discount that we had off our UFRS, the dollars we paid come out 19% higher. Thus the 73% discount off of your tariff is not neutral to the 8% discount that we were running off of our UFRS."
 {¶ 24} Dean Hamilton, national accounts executive for Con-Way in 2001, acknowledged at trial that Lampert had called his attention to questions over the shipments through the same e-mail (Plaintiff's Exhibit 3) which was sent to Hamilton approximately six weeks after the new pricing agreement went into effect. Prompted by Lampert's e-mail notification, Hamilton then concluded that Con-Way did provide an "incorrect discount." Hamilton stated in an e-mail, "Con-Way is wanting to immediately effect a change to the applicable discount for this business to compensate for the incorrect discount." Hamilton then explained that there were several ways to handle the pricing problem, identifying that the "most accurate would be for Avery to file an overcharge claim for all shipments handled and we would reimburse Avery those monies."
 {¶ 25} Apparently in Con-Way's mind, despite the fact that Avery had alerted Con-Way to the pricing differential and despite the fact that Con-Way acknowledged the problem, the onus was still on Avery to file some type of formal complaint. Con-Way points out that Avery admitted it never filed an official overcharge claim. The statute does not require it to do so. As the STB discussed, 49 U.S.C. § 13710(a)(3)(B) does not discuss a formal method for notification of a billing dispute. Id. The statute merely requires a shipper to "contest the original bill * * * within 180 days of receipt * * *." Clearly, Avery put Con-Way on notice through the e-mail communication from Lampert to Hamilton just weeks after the implementation of the new pricing structure that it contested the discount established by Con-Way. For the same reasons that we believe Avery complied with the federal requirements of notification, we likewise believe that Avery complied with the contractual 180 day notification requirement.
 {¶ 26} Con-Way's argument that Avery's notification was premature as the invoices for future shipments had not been received yet is not convincing. Avery promptly notified Con-Way that the entire pricing structure was not producing the anticipated results. Con-Way was aware that the entire scheme needed to be tweaked in order to accommodate both parties' intentions. The initial notification by Avery covered the entire shipping scheme under that discounted rate.
 {¶ 27} Next, Con-Way asserts that Avery failed to comply with federal law by filing its civil litigation for recovery of the shipping fees beyond the statutory period of 18 months. According to 49 U.S.C. § 14705(b), civil actions for recovery of overcharges must commence within 18 months from the date the claim accrued. However, subsection (d) of that same provision states: "[t]he limitation periods under subsection (b) of this section are extended for 6 months from the time written notice is given to the claimant by the carrier of disallowance of any part of the claim specified in the notice if a written claim is given to the carrier within those limitation periods."
 {¶ 28} The evidence at trial showed that following the notification of the pricing error from Avery to Con-Way in November 2001, Con-Way conducted an in-house audit of the pricing structure and provided a suggested solution to Avery on January 11, 2002. According to an e-mail from Hamilton to Lampert, Con-Way identified the difference in rate as 14%. Con-Way indicated that based on its perceived 14% difference, it was willing to adjust the discount rate from 73% to 76.8% to affect the change.[2] This did not correspond with Avery's calculations. Previously, Avery had indicated to Con-Way that it had diagnosed the difference as 19%.
 {¶ 29} The parties acknowledged that the rate differential remained an issue but agreed to table the same while they were in negotiations for a new agreement. A new agreement between Con-Way and Avery was signed in August 2002. Following the execution of that contract, Con-Way and Avery again began negotiating a settlement for the off-kilter pricing structure. On May 15, 2003, in response to an e-mail sent by Frank Andrulis, national transportation manager for Avery, Con-Way explicitly outlined its position following a meeting of the parties in regards to the alleged overpayment. Andrulis wrote, "[a]gain, there will be no refund. In the absence of some possible resolution regarding a contract pricing adjustment that benefits both parties moving forward, there is no other alternative."
 {¶ 30} Avery's complaint was filed on November 7, 2003, approximately five months and three weeks after Con-Way's refund refusal. According to the exceptions set forth in49 U.S.C. § 14705(d), Avery's complaint was timely. There is no documentation in the record from Con-Way to Avery explicitly refusing a refund or rejecting Avery's claims until the May 15, 2003 e-mail communication. On the contrary, until May 2003, the parties appeared to be negotiating a good faith settlement of the pricing problem. Con-Way directs our attention to "Plaintiff's Exhibit 12" which is an e-mail from Bill Kennelly of Con-Way to Andulis of Avery. The e-mail, dated April 16, 2003, stated that Con-Way "doesn't see resolution being a one time payment or refund." However, if the entire e-mail is read in context of the settlement negotiations, it is clear that at that point in time, Con-Way was still analyzing the available options. In fact, two sentences before the reference to the refund, Kennedy stated: "[t]he spreadsheet provided by Tony Lambert will be reviewed by CCX and within 10 days we will advise our review/agreement/disagreement, [sic] with the contents." Kennedy then went on to state that a resolution is yet to be determined. This is not an unequivocal rejection of Avery's claim as so-characterized by Con-Way.
 {¶ 31} Likewise, we do not find Con-Way's argument regarding the previous verbal communications to Avery that Con-Way was refusing the requested refund convincing. The statute clearly allows for an extension of the limitations period following a written denial by the carrier that is refusing the claim. Although verbal refusals may have been directed to Avery as early as January 2002, no written denial of the claim is evidenced in the record until May 15, 2003.
 {¶ 32} Finally, Con-Way claims that it was error for the trial court to deny its motion for summary judgment because Avery sought recovery in excess of its compensatory damages. Con-Way claims that it submitted unrebutted evidence to the trial court along with its motion for summary judgment that unequivocally proved that Avery had passed on the increased tariff rate to its customers and recovered the same already. According to Con-Way's theory, if that were true, then Avery would have already been made whole by any fault or pricing error committed by Con-Way.
 {¶ 33} However, Con-Way did not submit unrebutted testimony that proved Avery had already recouped its losses. Instead, Con-Way submitted an e-mail correspondence from Avery to Con-Way that explained how the RollXChange program was intended to work. Specifically, Avery indicated that it intended to pass on the cost of the program to its customers. There was no evidence attached to Con-Way's motion that Avery actually received the inflated rate from its customers. Without information before it that proved Avery had already recouped its losses directly from its customers, the trial court did not err in denying Con-Way's motion for summary judgment on that basis.
 {¶ 34} Further, we are not convinced by Con-Way's argument that the pricing agreement between the parties precluded Avery from seeking damages from Con-Way. Con-Way cites to Section VIII of the pricing agreement for the proposition that Avery had contracted away any and all rights to recover any damages arising as a result of the pricing agreement from Con-Way. Once again, Con-Way's piece-meal approach is faulty when viewed in connection with the entire structure and spirit of the agreement. Section VIII is titled "Liability and Indemnification." Each paragraph within that section discusses and refers directly to articles lost or damaged during the shipping process and injury or death to persons that occur during the shipping process. We do not agree with Con-Way that this section completely indemnifies it from any and all damages arising out of the contract.
 {¶ 35} Con-Way requests this court modify the damages award found by the jury as a result of Avery's acknowledgment that it did in fact recover approximately 36% of the money paid to Con-Way under the pricing agreement. We find no supporting authority for Con-Way's request. Avery paid more than three-million dollars to ConW-ay. Avery did not seek recovery for this entire amount, nor did Avery receive a judgment for that entire amount. Con-Way's perception of Avery's double recovery is not well taken.
 {¶ 36} Con-Way's first assignment of error is without merit.
 {¶ 37} Con-Way's second assignment of error states:
 {¶ 38} "THE TRIAL COURT ERRED IN ADMITTING AVERY'S EXHIBITS 3-10, AND 13, [sic] AND RELATED TESTIMONY, [sic] INTO EVIDENCE."
 {¶ 39} The issue of whether or not evidence is relevant is one best determined by the trial court. See, Renfro v. Black
(1990), 52 Ohio St.3d 27, 31. A trial court's decision regarding the admission or exclusion of evidence will not be disturbed on appeal absent an abuse of discretion. Calderon v. Sharkey
(1982), 70 Ohio St.2d 218, 222. Abuse of discretion implies more than an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. In order to constitute an abuse of discretion, the trial court's decision to admit the evidence must have been arbitrary, unreasonable or unconscionable. Id.
 {¶ 40} The exhibits to which Con-Way takes issue in its second assignment of error are: "Plaintiff's Exhibits 3-8": These exhibits are comprised of e-mail communications between Avery and Con-Way executives discussing the pricing problem and discussing potential solutions.
 {¶ 41} "Plaintiff's Exhibit 9": This is another e-mail with an attached spreadsheet breaking down each transaction and invoice to the accompanying discount.
 {¶ 42} "Plaintiff's Exhibit 10": This is a summary prepared by Avery which breaks down Avery's damages.
 {¶ 43} "Plaintiff's Exhibit 13": This exhibit is an internal e-mail communication among Con-Way executives regarding the same issue.
 {¶ 44} In addition, Con-Way condemns any testimony related to those exhibits and their content as improperly admitted into evidence.
 {¶ 45} Con-Way bases its second assignment of error on the parol evidence rule. "The parol evidence rule states that `absent fraud, mistake, or other invalidating cause, the parties' final written integration of their agreement, may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'"Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 27, quoting 11 Williston on Contracts (4 Ed. 1999) 569-570, Section 33:4. Basically, the parol evidence rule is a law of supersedence. The law presumes that an agreement, oral or written, that pre-dates a current contract was intended to be superseded by the current contract. Id. All of the evidence sought to be excluded by Con-Way on the basis of the parol evidence rule post dates the pricing agreement. Therefore, we conclude that the parol evidence rule does not apply.
 {¶ 46} Con-Way also challenges the evidence on the basis of Evid.R. 408. The rule states:
 {¶ 47} "Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statement made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose * * *."
 {¶ 48} Imminent or pending litigation is not a requirement for compromise negotiations to fall within the scope of Evid.R. 408. Schafer v. RMS Realty (2000), 138 Ohio App.3d 244, 295. The evidence contested by Con-Way demonstrates Con-Way's awareness of the pricing structure problem, Con-Way's reaction to the problem and Con-Way's proposed solutions to the problem. These types of discussions could be considered compromise negotiations that fall within Evid.R. 408. However, any perceived error in admitting the evidence is negated by the fact that Con-Way admitted evidence on its own behalf referencing the exact same issues.
 {¶ 49} Con-Way's "Exhibit ss" sets forth several e-mail communications among Con-Way executives discussing the pricing and discount dilemma with Avery. It also includes an e-mail from an Avery executive that outlines a proposed solution. The e-mail string begins with the Avery communication followed by Con-Way's response which acknowledges the prior negotiations. "Con-Way made an offer, in early 2002, to consider a discount adjustment." Further, the correspondence acknowledges the discrepancy in the pricing as "revenue neutral." It states, "Con-Way agrees that there is a difference in understanding between Avery and Con-Way regarding the `revenue neutral' conversions of rates that took place in late 2001 and early 2002."
 {¶ 50} Through the admission of this exhibit, Con-Way essentially negated any perceived error in the prior admission of Avery's objectionable exhibits. Therefore, we do not need to determine whether or not the contested exhibits were properly admitted because any error that may have arose by virtue of the admissions is overshadowed by Con-Way's similar exhibits documenting the same negotiation communications to which it objected and now assigns as error. The trial court did not abuse its discretion.
 {¶ 51} Con-Way also objects to the admission of Avery's exhibits 9 and 10 on a separate basis. "Exhibit 9" is a spreadsheet setting forth each shipment and corresponding tariff rate discount from Con-Way to Avery during the contested period. "Exhibit 10" consists of two separate damages summaries, one based on Avery's calculations at a 78% discount and one based on Con-Way's discount of 76.8% discount. Con-Way claims that Avery failed to produce these exhibits to Con-Way and therefore Avery should have been precluded from introducing the same as evidence at trial.
 {¶ 52} Avery claims it was not error for the trial court to admit these exhibits. Avery claims Evid.R. 1006 and 1007 provide for the proper admission of the documents. Evid.R. 1006 provides: "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court." Evid.R. 1007 provides: "[c]ontents of writings, recordings, or photographs may be proved by the testimony or deposition of the party against whom offered or by his written admissions, without accounting for the nonproduction of the original."
 {¶ 53} Con-Way provided the underlying documents that formed the basis for both the spreadsheet and the summary. Con-Way does not contest this fact, yet claims that it had no way of determining the accuracy of the calculations and spreadsheet created by Avery. Pursuant to Evid.R. 1006, the calculation and the spreadsheet were admissible as summaries of voluminous writings. Since the original invoices that formed the basis for the spreadsheet and summary were created by Con-Way, we cannot conclude that the trial court abused its discretion in allowing the exhibits.
 {¶ 54} Con-Way also contests the spreadsheet and summary exhibits because it alleges that Avery failed to demonstrate their accuracy. If Con-Way wanted to challenge the spreadsheet and summary on the basis of accuracy, it could have created counter exhibits evidencing Con-Way's interpretation of the invoices and discounts. It is important to remember that the original documents and invoices were generated by Con-Way. Con-Way puts itself in a difficult and untenable position to contest exhibits prepared using its own original documents.
 {¶ 55} Con-Way's second assignment of error is without merit.
 {¶ 56} Con-Way's third assignment of error states as follows:
 {¶ 57} "THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY REGARDING CON-WAY'S DEFENSE OF SET-OFF OR RECOUPMENT."
 {¶ 58} Con-Way submitted proposed jury instructions regarding recoupment which would have required the jury to lower Avery's damages if it found that the RollXChange program failed to produce the volume as promised by Avery and relied upon by Con-Way. The set-off would have been the amount of damages due to ConW-ay as a result of its justifiable reliance on Avery's representations regarding the viability and productivity of the new program.
 {¶ 59} An appellate court reviews a trial court's refusal to give a proposed jury instruction under an abuse of discretion standard. State v. Wolons (1989), 44 Ohio St.3d 64, 68, see, also, State v. Moissis, 11th Dist. No. 2000-L-187, 2002-Ohio-4955, at ¶ 26. "It is within the sound discretion of the trial court to determine whether the evidence presented at trial is sufficient to require a jury instruction * * *."Wolons, supra, at paragraph two of syllabus.
 {¶ 60} There was testimony by Mr. Bruce Moss, vice-president of operations for Con-Way, that the RollXChange program did not generate the anticipated business. Mr. Moss characterized this discrepancy when explaining the difference in the tariff discount rate configurations for Avery under the new program. In rejecting Con-Way's jury instruction for recoupment, the trial court concluded that there was not enough evidence presented to justify the jury charge. We cannot conclude, based on the limited testimony in the record regarding the expectations and reality of the RollXChange program that this determination was unreasonable, arbitrary or unconscionable. The trial court, as the primary host of the trial evidence, was in the best position to determine whether the charge was warranted. The pricing agreement between the parties certainly did not reference any projections for shipping other than a guarantee of "no less than five shipments." The evidence proved that this minimal shipping quota was met. The testimony of Mr. Moss did not unequivocally establish Con-Way's right to set-off and therefore we cannot say that the trial court abused its discretion in disallowing the instruction on recoupment.
 {¶ 61} Con-Way's third assignment of error is without merit.
 {¶ 62} For the reasons stated in the Opinion of this court, the assignments of error are without merit, and it is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.
O'Neill, J., Grendell, J., concur.
[1] A tariff is the rate charged by shippers. Avery applied a uniform freight system tariff which essentially applied the same rate for all carriers and then provided an appropriate discount to reach the market value for the service of shipping the goods.
[2] The 14% difference would not correspond to a 14% adjustment because the previous rate had been based on Avery's tariff and the current rate was based on Con-Way's tariff.